(No. 12893.—Judgment affirmed.)

MARY E. MERCER, Admx. Appellant, *vs.* FREDERICK E. MEINEL, Appellee.

*Opinion filed December 17, 1919.*

1. NEGLIGENCE—*grantor is not bound to see that premises remain in safe condition.* One who has conveyed premises and ceased to have any connection therewith owes no duty to any person to see that such premises are maintained in safe condition.

2. SAME—*when former owner of premises is not liable for injury due to defective appliance.* A former owner of premises who before conveying the same had installed a gas heater for water can not be held liable for an injury from escaping gas due to a defective condition of the exhaust pipe of the heater, where there is no proof that he knew of the dangerous condition at the time he sold the premises nor that the dangerous condition existed at that time.

3. PRACTICE—*overruling demurrer does not preclude directing verdict.* The fact that a demurrer to the declaration has been overruled and a plea of the general issue filed does not preclude the court from granting a motion to direct a verdict for the defendant, as the demurrer and the motion do not present the same question.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

CHILTON P. WILSON, for appellant.

BEACH & BEACH, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action on the case instituted by the appellant, Mary E. Mercer, administratrix of the estate of Charles Mercer, deceased, in the circuit court of Cook county, against the appellee, Frederick E. Meinel, to recover damages for the death of Charles Mercer. · An issue was formed by the plea of not guilty, and at the conclusion of the evi-

dence for the plaintiff, the court, on motion of the defendant, directed a verdict of not guilty. Judgment was entered on the verdict, and on appeal to the Appellate Court for the First District the judgment was affirmed and the court granted a certificate of importance and allowed an appeal to this court.

The declaration contained three counts, the first of which alleged that on January 1, 1914, the defendant owned and controlled the premises at 535 North Albany avenue, in Chicago, and prior thereto installed a water heater in the bathroom of said premises, with a burner to be lighted to heat water for bath and other purposes and with a ventilating pipe running up in the corner of the bathroom behind a flush-box and below the ceiling, so that one entering the bathroom could not see that the pipe ended inside of the bathroom; that when the heater was lighted it gave off carbon and other material in the bathroom; that the defendant occupied the premises for several months prior to January 1, 1914, when the heater was installed, and knew its dangerous condition; that on July 23, 1914, the defendant sold the premises to Charles Kocher without informing him of the manner in which the heater was installed or that the exhaust pipe ended in the bathroom or the dangerous condition thereof; that Kocher never occupied the premises but on October 12, 1914, leased them to plaintiff and her family, who thereafter occupied them as a dwelling, and that while said heater was lighted and heating water, Charles Mercer, son of the plaintiff, was with due care and caution taking a bath in the bathroom, and was then and there poisoned and killed by carbon monoxide gas generated in the bathroom by reason of the careless and negligent manner in which the heater was installed. The second count made the same allegations, with the further averment that at the time the heater was installed by the defendant there was an ordinance of the city of Chicago requiring a ventilating pipe not less than two inches in diameter extending

to a chimney flue or open air, with a cap or cowl to the outer air opening, to carry off escaping gases or fumes, and that the heater was installed by the defendant contrary to the provisions of the ordinance. The third count made the same allegations as the first, but averred that after the heater was installed the ordinance was passed, and provided that water heaters that had been installed should be made to comply with the ordinance, and that the defendant occupied the premises for several months after the ordinance was in force and effect without making the heater comply with it.

It is assigned for error that the trial court erred in entertaining a motion to direct a verdict because a demurrer to the declaration had been overruled and the defendant had filed a plea of the general issue, so that the question raised by the motion had already been determined. The demurrer admitted the material averments of the declaration, and the question raised thereby was whether such averments were sufficient to constitute a cause of action, but on the motion to direct a verdict the question presented was whether the evidence offered by the plaintiff, with all legitimate inferences to be drawn from it, would be sufficient to sustain a verdict. If the declaration stated a cause of action the motion raised an entirely different question, whether the evidence fairly tended to sustain its averments. The court did not err in entertaining the motion.

The evidence introduced by the plaintiff was to the following effect: The bathroom was very small, measuring four feet six inches by five feet six inches. The bath tub occupied the north side, and owing to a slanting roof the wall was only three feet high on that side. The roof sloped up over the bath tub to near the south side of the ceiling, leaving a small part of a flat ceiling about eight feet high. There was a small glass window in the sloping part of the roof opening out on the roof and a door on the south side. At the east wall the heater in question was placed and at the southeast corner there was a toilet seat, over which there

was a flush-box near the ceiling. Next to the heater and near the east wall there was a sewer pipe six inches in diameter, which ran from the basement through the bathroom and out through the roof, and next to the sewer pipe there was a three-fourths-inch gas pipe. The exhaust pipe ran from the top of the heater along the east wall along the sewer pipe and ended behind and above the flush-box. The Mercer family, consisting of the plaintiff, her husband, five children and other persons, making a large family, moved into the building on November 4, 1914, and used the bathroom and heater for family use until August 29, 1915. Some of the time the hot water for the bath tub was supplied from pipes attached to the coal range in the kitchen on the first floor, but the bathroom was in general use with that exception. The plaintiff almost invariably prepared the water for the bath for each member of her family but did not remember of any of the family taking a bath while the heater was going. On August 29, 1915, the plaintiff lighted the heater and turned on the water, and her son Charles Mercer, fourteen years old, went into the bathroom to take a bath. He closed the window and the bathroom door, and soon afterward his mother, the plaintiff, heard water dripping in the room on the floor below. She went up to the bathroom and found Charles sitting in the tub, dead, with water running from the cold and hot water faucets, the heater going and the water up to the overflow pipe, which leaked and caused the water to drop below.

The death of Charles was caused by the escape of carbon monoxide gas from the exhaust pipe, and that gas is odorless, of a heavier specific gravity than air and a deadly poison when breathed into the lungs. The defendant had installed the heater and occupied the premises with his family for several years before he sold the property to Kocher and after that sale until November 4, 1915, when the plaintiff and her family moved in. There never had been an opening into a chimney flue or through the roof of the

building, and there never had been any bad results from the use of the heater and bathroom during the time the defendant occupied the premises nor the ten months during which the plaintiff and her family occupied them up to the time of the accident. The evidence as to the condition of the pipe when the defendant sold to Kocher was given by Kocher as a witness, and he testified there was never any talk between him and the defendant about the heater. He described the sewer pipe, the small gas pipe, the exhaust pipe and the flush-box over the toilet seat and a hole in the ceiling above the flush-box. He said he saw the heater and the pipe leading up to the ceiling; that the pipe ran straight up to the ceiling to the hole in the wall; that he could not see whether it ran into the ceiling or through the ceiling, but he did not think it ended in the bathroom or he would have noticed it, and that the hole was a little larger than the pipe as he remembered it, and the pipe went all the way up to the ceiling. After the accident an examination was made, which showed the hole in the ceiling above the end of the exhaust pipe, but the pipe did not reach the hole or ceiling. The plaintiff's husband testified that the pipe from the heater led up straight and ran along the slant of the roof behind and above the flush-box, and he stood on the toilet and looked along and felt with his hand and found that the end of the pipe then pointed south to a short distance of the south wall of the bathroom and ended pointing south; that it did not reach up to the hole in the ceiling and that the Mercer family never moved the pipe. The ordinance took effect April 12, 1911, and the heater was not thereafter made to conform to the ordinance.

There have been cases where it was held that a manufacturer of a machine or article designed and fitted for a particular use is liable to a third person who in the natural and intended use suffers an injury as the natural and probable consequence of the negligence of the manufacturer in its construction and sale. The case of *Huset* v. *Case Thresh-*

*ing Machine Co.* 120 Fed; Rep. 865, is an example of that class. There have been other cases in which it has been held that where there are concealed defects in demised premises attended with danger to an occupant which a careful examination would not disclose but which are known to the landlord, the latter is under obligation to make them known to the tenant, and upon his failure to perform that duty he will become liable for whatever damages result to the tenant therefrom. (*Sunasack* v. *Morey*, 196 Ill. 569; 1 Thompson on Negligence, secs. 1131-1158.) A large number of cases of both kinds are cited and made the basis of an argument that the defendant remained liable after he parted with the title and control of the premises and sustained no contract relation either with Kocher or his tenant, but no case has been found where such a liability has been declared. The liability, if any, must rest upon the existence of a duty which must arise out of a relation between the parties and a negligent failure to perform the duty. There is a material difference between the relation between a manufacturer or vendor of a machine or article purchased for a specific use and one using the machine or article for the contemplated purpose, or between a landlord occupying a contractual relation with his tenant and the tenant, and the situation of one who has ceased to have any connection whatever with property which he has conveyed or his grantee. Whether or not there is a liability in case of an existing dangerous condition, it cannot be true that the grantor assumes a duty to see that the premises remain in a safe condition. In this case there was an entire failure of any evidence fairly tending to prove either the averment of the declaration that the heater, at the time of the sale to Kocher, was in a defective or dangerous condition, or that the defendant had any knowledge of such condition, if it existed. Kocher testified, as before stated, that at the time of the sale, as far as he could see, the pipe extended up to the ceiling, and as far as he remembered it ran through

the ceiling and that it did not end in the bathroom, otherwise he would have noticed it. The only other testimony was that after the accident the end of the pipe pointed to the south and was horizontal and did not point upward to the hole or the ceiling. The evidence was that it could not then be seen by one entering the bathroom door, and the reasonable conclusion is that the pipe is jointed and the position of the upper end had been changed in some way. The heater had not been made to comply with the ordinance, but the bathroom had been used by the defendant for several years without any bad effects or any accident, which makes it quite clear there was no dangerous defect. If there was any liability of the defendant it arose at the time of the sale to Kocher, and there was no evidence from which an inference could fairly be drawn that a dangerous condition existed at that time. The conclusion that it did not is strengthened by the fact that the bathroom was used thereafter for ten months by the members of a large family without any deleterious effect.

The fact that the ordinance had not been complied with during the ownership of the defendant created no liability of the defendant to any person, because no damage or injury resulted from the failure. If the defendant would have been liable to a penalty in a prosecution under the ordinance, any duty to make the heater comply with the ordinance rested on Kocher after the sale and not on the defendant, and if any injury resulted from such failure the liability would rest upon Kocher, if anyone. We do not say whether the declaration stated a cause of action or not, but if it did, there was no evidence tending to prove its averments that a dangerous condition existed at the time of the sale to Kocher, or if it did exist, that the defendant knew or from any fact or circumstance ought to have known of it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*