### A90A2335. FRANCIS v. HAYGOOD CONTRACTING, INC.
(404 SE2d 136)

McMURRAY, Presiding Judge.

On May 19, 1988, an office park was being developed in Cobb County, Georgia, and defendant Haygood Contracting, Inc., was engaged in the construction of a roadway at the office park. Although gravel had been placed on the roadway, it was far from complete. More gravel work was needed and asphalt work was needed.

Access to the office park was blocked by a barricade at the entrance. But plaintiff gained access to the park many times, riding a motorbike along a dirt path.

Plaintiff had been seen often by construction workers at the office park. He was never told by anyone that he had to leave the premises. No signs were posted on the property warning the public to stay away.

Plaintiff was aware that the office park roadway was under construction. He knew that more work needed to be done on the road.

On the day in question, plaintiff was injured seriously when he rode his motorbike over piles or rows of gravel which defendant placed on the roadway. Plaintiff stated that he could not see the piles or rows of gravel because they blended in with the gravel which defendant levelled off previously.

Plaintiff brought this personal injury action against defendant, alleging the piles or rows of gravel constituted a hazard to the "motoring public" and defendant failed to protect the "motoring public" from that hazard. Defendant answered the complaint and moved for summary judgment. The trial court granted defendant's summary judgment motion and plaintiff appeals. *Held*:

1. We need not decide whether plaintiff was a licensee or a trespasser. Even if plaintiff were a licensee, it cannot be said that the trial court erred in granting defendant's motion for summary judgment.

" 'A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved. . . .' [Cits.]" *Patterson v. Thomas,* 118 Ga.

App. 326, 328 (163 SE2d 331). Accord *London Iron &c. Co. v. Abney*, 245 Ga. 759, 761 (267 SE2d 214).

"A licensee cannot recover by showing that the defendant was merely negligent, but must show that the defendant wilfully and wantonly injured [him]." *Laurens v. Rush*, 116 Ga. App. 65, 67 (156 SE2d 482); OCGA § 51-3-2. As it is said: " 'An owner owes to a licensee no duty as to the condition of the premises . . . save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm.' " *Atlantic Coast Line R. Co. v. O'Neal*, 180 Ga. 153, 156 (178 SE 451). "To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character." *Mandeville Mills v. Dale*, 2 Ga. App. 607, 610 (58 SE 1060). Accord *Higginbotham v. Winborn*, 135 Ga. App. 753, 756 (218 SE2d 917); *Central of Georgia R. Co. v. Ledbetter*, 46 Ga. App. 500, 504 (168 SE 81).

"What is a mantrap? In *Crosby v. Savannah Electric Co.*, 114 Ga. App. 193, 198 (150 SE2d 563), it is held: 'The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury. [Cit.] A typical example is the setting of a spring or trap gun to stop or prevent depredations by animals or humans. . . . In that situation the owner expects that a trespasser will come, and deliberately sets a trap designed to do injury. It may result from the knowledge on the part of the owner of the existence of a dangerous or hazardous condition coupled with a conscious indifference to the consequences, so that a deliberate intent to inflict injury is inferable [cit.]; or from a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it. [Cits.]' " *McKinsey v. Wade*, 136 Ga. App. 109, 110 (5) (220 SE2d 30).

It cannot be said that the placement of gravel on a private roadway which is under construction constitutes a pitfall or mantrap. Nor can it be said to be a dangerous or hazardous condition from which a deliberate attempt to inflict injury can be inferred. Therefore, we hold that, as a matter of law, defendant did not breach the duty which it owed to plaintiff: defendant did not wilfully or wantonly injure plaintiff.

Besides, the rule imposing liability for harm caused to licensees "presupposes that the licensees do not know or have reason to know of the risks involved. [Cits.]" *Wren v. Harrison*, 165 Ga. App. 847, 849 (303 SE2d 67). In the case sub judice, plaintiff knew or had reason to know the risks of riding a motorbike on the roadway. He rode a motorbike on the roadway many times. He was aware that the roadway (indeed, the entire office park) was under construction and that more work needed to be done. Thus, plaintiff knew or should have

known that he would encounter obstacles on the roadway.

Plaintiff should not have been surprised by the presence of gravel piles on the roadway; he should have been on the lookout for such things. "The plaintiff went into the situation with his eyes wide open. He saw the whole picture; he had the opportunity to measure the risks, if any. . . ." *Simmons v. Classic City Beverages*, 136 Ga. App. 150, 151 (4) (220 SE2d 734). The trial court did not err in granting defendant's motion for summary judgment.

2. Plaintiff contends the trial court erred in failing to take into account the affidavit of an expert who opined that defendant did not meet the standard of care pertaining to warnings or barricades on roadbeds under construction. (The trial court ruled that the affidavit failed to set forth the applicable standard of care and how defendant deviated from it.) We cannot accept this contention. The expert did not describe the standard of care pertaining to the construction of roadways on private property. He simply referred to a general standard of care and to a manual which obviously pertains to public, not private, roadways.

Besides, the standard of care in the road construction industry has little, if any, bearing upon the real issue in this case: whether defendant wilfully or wantonly injured plaintiff. (Deviation from a standard of care may show simple negligence; it does not show wilful or wanton conduct.) We determined that, as a matter of law, defendant did not wilfully or wantonly injure plaintiff. See Division 1. Nothing in the expert's affidavit would lead us to a different conclusion.

*Judgment affirmed. Sognier, C. J., and Carley, J., concur.*

DECIDED FEBRUARY 26, 1991 —
REHEARING DENIED MARCH 14, 1991 —

*Bedford, Kirschner & Venker, Thomas J. Venker, E. Graydon Shuford*, for appellant.
*John C. Grabbe IV*, for appellee.